UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LORI CORELL,

              Plaintiff,                      Case Number 06-13895-BC
                                                      Honorable Thomas L. Ludington

v.

CSX TRANSPORTATION, INC.,

              Defendant.
                                            /

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING COMPLAINT WITH PREJUDICE**

This matter is before the Court on a report issued by Magistrate Judge Charles E. Binder on August 21, 2008. The magistrate judge recommended granting Defendant's motion for summary judgment because Plaintiff did not advance evidence of pretext, as is necessary to maintain a claim for gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* On September 5, 2008, Plaintiff timely filed objections to the magistrate judge's report and recommendation. On September 22, 2008, Defendant filed a response.

Plaintiff's objections largely restate her response to Defendant's motion for summary judgment, albeit in abbreviated form. Plaintiff reiterates her factual allegations concerning the termination of her employment, and her belief that Defendant terminated her based on her gender. Because the magistrate judge found that Plaintiff advanced a prima facie case of discrimination, Plaintiff only disputes the magistrate judge's conclusion that she did not advance evidence of pretext. Despite the fact that Plaintiff did not make specific objections, the Court has reviewed the magistrate judge's findings concerning Plaintiff's allegations of pretext, and agrees with the

magistrate judge that Plaintiff has not advanced evidence of pretext. Accordingly, the Court will overrule Plaintiff's objections, adopt the magistrate judge's report and recommendation, grant Defendant's motion for summary judgment, and dismiss Plaintiff's complaint with prejudice.

I

Plaintiff did not object to the magistrate judge's statement of the facts, thus, the Court will adopt the magistrate judge's statement of the facts. The magistrate judge summarized the facts as follows:

> Plaintiff Lori Corell worked for Defendant CSX Transportation, Inc., ("CSX") as a brakeman/flagman/conductor, from August 31, 1998, until her dismissal on January 13, 2005. (Def.'s Mem. in Supp. of Mot., Dkt. 28 at 9-10; Pl.'s Dep., Dkt. 28, Ex. 11 at 801; Pl.'s Resp. to Mot., Dkt. 31 at 3.) Plaintiff asserts that she was terminated by either Mr. Tuchek or Mr. Burrus based on her gender[1] and has stated that she has no direct evidence to support that conclusion. (Dkt. 31 at 3; Dkt. 28, Ex. 12 at 64-65, 96.) When asked what acts Defendant committed to support her allegation that she was wrongfully terminated, Plaintiff responded, "Because they fired me; I should have had the 30 days off and that would have be [sic] it, and I would have gladly done that. But they had a hearing and then I got a letter and I was fired." (Dkt. 28, Ex. 12 at 97.)
>
> Defendant counters that Plaintiff was terminated because of an incident that occurred on November 20, 2004, when Plaintiff allowed a train to enter onto a restricted area of track where a contractor was working; Defendant thus asserts that Plaintiff's termination had nothing to do with gender. (Dkt. 28 at 8-9; Dkt. 31 at 3.)
>
> The facts of the incident are largely undisputed. According to Plaintiff, on November 20, 2004, she contacted dispatch and learned that train Q322 was coming up to "Holly Diamond" track. (Dkt. 28, Ex. 14 at 87.) She resumed her conversation with the foreman when the "defect detector went off." (Id.) She "went down to the bridge where the tracks were with the lift and told the [contractors] to start taking the lift off the tracks." (Id.) The workers acknowledged her and started to move the lift. (Id. at 92.) When the train asked for permission to enter, the lift was 20-30 feet from being out of harm's way, so Plaintiff "[g]ave them permission and as I gave them permission, I turned around and realized that [the contractors had] stopped to take and put their boards reposition them by the tracks and they had never done this

---

[1] Plaintiff originally claimed age and gender discrimination but chose not to further pursue the age discrimination claim. (Dkt. 31 at 3.)

-2-

before.[2] As they did that I told 32220 to ease 'em up and then they were coming around the corner." (Id. at 87, 92.) Once Plaintiff realized that the train was not going to be able to stop in time, she "told the [contractors] to get out of the way and make sure they were clear." (Id. at 93.) Although emergency braking was used, the train struck the lift, destroying the contractor's equipment and derailing the train. One of the contractor's employees was forced to jump off the equipment to avoid being hit. For the next five hours, the track was blocked while the wreckage was cleared. (Id.; Dkt. 28 at 8, 14.)[3] Plaintiff acknowledged in her written statement that she "gave them permission through thinking the guys would have enough time to get the lift off." (Dkt. 28, Ex. 14 at 87.) Plaintiff further stated that in the past when she had given permission under similar circumstances, the workers had cleared the tracks in that same amount of time. (Dkt. 28, Ex. 14 at 91, 97.)

Although Plaintiff views these former occasions as support for the reasonableness of her conduct that day, Defendant views them as probative of a pattern of violation of policies, since policy dictates that a train not be given permission to enter a track until after any equipment or workers are completely clear of the track. (Dkt. 28, Ex. 14 at 97; Dkt. 40 at 3.) Plaintiff states that she did not intend to cause injury or damage to any person or property. (Dkt. 28, Ex. 14 at 96; Dkt. 32.) The equipment damaged in the accident was valued between $85,000 and $125,000. The locomotive damage amounted to $2,600. (Dkt. 28, Ex. 14 at 56.) Although there were no reported injuries at the time, the train engineer later filed an injury claim. (Dkt. 28 at 8.)

Plaintiff concedes that her actions that day violated two portions of Defendant's Rule 72, specifically, those provisions that require a flagman to "ascertain which track the approaching movement is located and that all contractor equipment and personnel are clear of that track before permission for rail movement is given" and which provides that when "workers request permission to obstruct a track," the flagman "must not permit movements to enter the work location until the track is no longer obstructed." (Dkt. 28, Ex. 14 at 25 (Rule), 95 (Pl.'s testimony at formal investigation hearing).)

Martha Gill, Manager of Field Administration, reviewed the facts and prepared a charge letter, advising Plaintiff that a formal investigation hearing would be held. (Dkt. 28 at 11.) The hearing was held and the transcript was sent to Plaintiff, Field Administration, the Labor Relations Department, the Division Manager and the

---

[2] Plaintiff clarified that she meant that the contractors stopped to readjust the boards they use to remove equipment, such as the lift. (Dkt. 28, Ex. 14 at 93.) In her affidavit, Plaintiff notes that "they stopped to rearrange the boards which they had never done before in my experience working with them approximately fifteen times that same month." (Dkt. 32.)

[3] For a more formal description and detailed chronology of the events that day, please refer to A. J. Erdman's report of the incident. (Dkt. 28, Ex. 14 at 107-09.)

-3-

Regional Vice President of Defendant corporation for review. (Id. at 11-12.) Plaintiff was terminated by Pete Burrus, the Division manager, after he consulted with the Field Administration and the Regional Vice President, Tony Tuchek. (Dkt. 28 at 15.) Plaintiff asserts that the "ultimate final decision rests with the Vice President of the Northern Region, Tony Tuchek." (Dkt. 31 at 14.)

Plaintiff availed herself of the appellate procedures available under the Collective Bargaining Agreement ("CBA") and the Railway Labor Act, 45 U.S.C. § 151 et seq. (Dkt. 28 at 15.) After being denied relief at these levels, Plaintiff filed the instant complaint.

II

As the magistrate judge indicated, to prove pretext, a plaintiff must show that the defendant's proffered reason for terminating her employment either: "(1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). *See also Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008); *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). In order to show that the defendant's proffered reason did not actually motivate the defendant's challenged conduct, the plaintiff must show that "the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext or coverup." *Abdulnour v. Campbell Soup Supply Co. LLC*, 502 F.3d 496, 503 (6th Cir. 2007) (citations and quotations omitted).

Even when a plaintiff establishes a prima facie case under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff must ultimately prove that she was a victim of intentional discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000). Accordingly, in the summary judgment context, "a plaintiff must produce enough evidence that a jury could reasonably reject the employer's explanation for its decisions." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996) (citing *Manzer v. Diamond*

*Shamrock Chems. Co.*, 29 F.3d 1078, 1083) (6th Cir. 1994)).

Plaintiff argues that she has advanced evidence that Defendant's assertion that it terminated her employment based on the derailment incident is pretext for gender discrimination. Plaintiff advances evidence that an initial report, completed by Defendant's employee A.J. Erdman, indicated that the incident was a "life critical violation," rather than the more serious "egregious act" that Defendant later considered it to be. Had Defendant ultimately classified the event as a life critical violation rather than an egregious act, Plaintiff argues that she would only have received a thirty-day suspension, and that Defendant would not have terminated her employment. However, as the magistrate judge noted, on the report form that Mr. Erdman completed, there was no "egregious" category for Mr. Erdman to choose, thus, Defendant's ultimate classification of the incident as egregious was not inconsistent with the initial classification as life critical.

Moreover, as the magistrate judge correctly indicated, even if Defendant's investigation of the incident was not conducted precisely according to its internal policies or procedures governing incident investigations, that fact alone does not make the evidence probative of pretext for gender discrimination. Defendant explained that it classified the incident as "egregious" in order to take Plaintiff "out of service" while a formal investigation was pending due to the gravity of the situation. Plaintiff has advanced no evidence to suggest that Defendant classified the incident as egregious based on her gender, rather than on the seriousness of the incident.

In contrast, Defendant has advanced evidence that it has terminated thirteen male employees based on damage or derailment incidents between 2000 and 2004. Plaintiff attempts to distinguish these incidents because the employees that were involved violated a different rule of Defendant's than the rule that Plaintiff violated. Plaintiff argues that only J.W., a male employee given a thirty-

day suspension for a violation of the same rule as Plaintiff, is appropriate for comparison. The magistrate judge thoroughly analyzed the similarities and differences between Plaintiff and J.W., and the Court adopts the magistrate judge's analysis. *See* Report and Recommendation [Dkt. # 41, 8-18]. While J.W. may be an appropriate comparator such that Plaintiff can establish a prima facie case, evidence that Defendant disciplined differently one male employee, who was involved in a similar, but not identical incident, is not sufficient to establish pretext. In light of Defendant's justification for termination of Plaintiff's employment, Plaintiff's evidence does not allow the Court to conclude that "a jury could reasonably reject the employer's explanation for its decisions." *See Kocsis*, 97 F.3d at 883. Thus, Plaintiff has not advanced sufficient evidence to survive Defendant's motion for summary judgment.

III

Accordingly, it is **ORDERED** that Plaintiff's objections [Dkt # 42] are **OVERRULED**, the magistrate judge's report and recommendation [Dkt # 41] is **ADOPTED**, Defendant's motion for summary judgment [Dkt # 28] is **GRANTED**, and Plaintiff's complaint [Dkt # 1] is **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 21, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 21, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS

---